# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Dublin Division

**FILED**

Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By dreese at 3:18 pm, Sep 25, 2014

In the matter of: )
)
JENERRA D. GUYTON, )                    Chapter 13
)
*Debtor.* )                    Number 14-30030-EJC
)

## OPINION AND ORDER ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF BANKRUPTCY AND WAIVER OF 30 DAY REQUIREMENT

Jenerra D. Guyton ("Debtor") filed her Chapter 13 petition on January 28, 2014. (Dckt. 1.) Before the Court is the Motion for Relief from the Automatic Stay of Bankruptcy and Waiver of 30 Day Requirement ("Motion" or "Motion for Relief") filed by Covered Bridge, LLC ("Covered Bridge"). (Dckt. 18.) Covered Bridge seeks relief pursuant to 11 U.S.C. § 362(d)(2), alleging that Debtor does not have any equity in property located at 353 Ernest Stinson Road, East Dublin, Georgia (the "Property"), and that the Property is not necessary for an effective reorganization. *Id.* It is also Covered Bridge's position that Debtor's tenancy on the Property terminated prepetition; therefore, Covered Bridge requests the Court to terminate the automatic stay with respect to its interest so that it may pursue a dispossessory action in state court to have Debtor removed from the Property. *Id.* Because Covered Bridge has not shown why it is entitled to the relief it seeks, the Motion is denied.

## I.     JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28

AO 72A
(Rev. 8/82)

U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(G). In accordance with Bankruptcy Rule 7052, the Court makes the following Findings of Fact and Conclusions of Law.

II.   FINDINGS OF FACT

A.    Procedural History

On January 28, 2014, Debtor filed her Chapter 13 petition and her proposed Plan to repay creditors. (Dckts. 1, 6.) Based on her gross monthly income of $2,277.77, plus a tax refund of $590.08, Debtor proposes to pay all of her disposable income of $373.00 per month to the Trustee over a period of thirty-six (36) months. (Dckts. 6, 14.) Covered Bridge filed this Motion on February 17, 2014. (Dckt. 18.) The Court held an evidentiary hearing on the Motion for Relief on June 10, 2014, where I requested that the parties submit proposed findings of fact and conclusions of law. The Trustee filed an Objection to Confirmation of Debtor's Plan on March 10, 2014.[1] (Dckt. 22.) Since then, the Confirmation Hearing has been continued on three occasions: April 8, 2014, June 10, 2014, and August 12, 2014. (Dckts. 30, 35, 39.)

---

[1] The specific deficiencies listed in the Trustee's objection are:

1. The Plan does not satisfy Section 1325(a)(4) due to equity in personal property (mobile home).
2. Debtor's second vehicle is not necessary to an effective reorganization.
3. Debtor has not provided pay advices for We-Touch Visiting Caregivers, Inc. and Easter Seals Middle Georgia.
4. Need a step up when American Home leases are paid.

B.      The Land Sale Transaction

On October 31, 2006, Debtor entered into a contract to buy a 1.44 acre home site in Laurens County, Georgia onto which she later moved and set up a mobile home for her residence. (Ex. B; dckt. 18.)  The purchase price for the tract of land was $13,995.00. *Id.* The purchase was financed under a contract that provided for a down payment of $200.00 and monthly payments of $165.56 extending for one hundred eighty (180) months. *Id.*

At the hearing on stay relief, the parties stipulated to the admissibility of four documents: the aforementioned **Agreement for Sale and Purchase of Real Estate** (the "Agreement") dated October 31, 2006 (Ex. B; dckt. 18), the **Installment Note** [Secured by Deed to Real Estate] dated November 14, 2006 (Ex. A; dckt. 18), the **Special Warranty Deed** dated November 14, 2006 (Movant's Ex. M-1), and the **Security Deed** dated November 14, 2006 (Movant's Ex. M-2).[2]  Collectively, these documents comprise the agreement of the parties to this transaction for the sale of the Property.  While the documents suffer from certain deficiencies discussed *infra*, they do reflect the parties' intentions clearly enough so that the Court can at least discern what was supposed to happen under their agreement.

---

[2] The court also admitted into evidence the following exhibits: Borrower Statement of Account, a detailed listing of all payments and late charges (Movant's Ex. M-3); a letter dated January 14, 2014, giving Debtor ten (10) days to cure defaults (Movant's Ex. M-4); Loan Servicing Notes reflecting all communications with Debtor (Movant's Ex. M-5);  a photograph of Debtor's Property (Debtor's Ex. D-1); and an estimate for the cost of removing Debtor's mobile home (Debtor's Ex. D-2).

The Agreement executed on October 31, 2006, identified the seller as "Covered Bridge." (Ex. B; dckt. 18.) The land being sold was identified as "Lot No. 9 containing 1.44 acres," with no description of the county or even the state of the tract's location. *Id.*

Debtor also executed the Installment Note dated November 14, 2006, by which she promised to pay to Covered Bridge, LLC the principal sum of $13,795.00 at twelve percent (12%) interest, with the first payment of $165.56 coming due on January 1, 2007. (Ex. A; dckt. 18.) The note provided for a late charge of ten percent (10%) to be added in the event a payment was made more than fifteen (15) days after the due date and for a ten (10) day notice of default and right to cure period to become effective three (3) days after mailing the notice. *Id.*

As part of this transaction, Covered Bridge executed a Special Warranty Deed dated November 14, 2006, which purports to convey to Debtor in fee simple property more fully described as:

> All that tract or parcel of land being known and distinguished as Lot 9, containing 1.44 acres, as shown on a plat of survey prepared by Byron L. Farmer, Georgia RLS No. 1679, surveyed August and September 1999, recorded in Plat Book 8, Page 22, Clerk's Office, Laurens County Superior Court. Said plat is specifically incorporated herein by reference for a more complete and accurate description of the property conveyed.

(Movant's Ex. M-1.) Finally, Debtor executed a Security Deed also dated November 14, 2006, containing the same property description. (Movant's Ex. M-2.) The language of that

Security Deed purports to "mortgage, grant and convey to Lender" the subject Property, in fee simple. *Id.*

According to Covered Bridge's interpretation of these documents, Debtor had the opportunity to acquire actual *title* to the Property by making six (6) timely payments[3], at which time the Special Warranty Deed and the Security Deed would be recorded. The Special Warranty Deed was never delivered to Debtor. Neither the Special Warranty Deed nor the Security Deed were ever recorded in the real estate records of Laurens County, Georgia. Covered Bridge continues to hold the original versions of these documents.

C.    Debtor's Payment History

From November 2006 to January 2014, Debtor made approximately seventy-four (74) payments totaling $13,429.04 including late charges; however, only five (5) of those payments were timely. (Movant's Ex. M-3.) For each of the remaining sixty-nine (69) payments, Debtor incurred and paid a $16.56 late fee. *Id.*

Debtor stipulated to the principal balance owed of $11,003.72 and to the authenticity and accuracy of the Itemization of Unpaid Installments (attachment to Ex. C; dckt. 18), which illustrates that no payments have been received on Debtor's account for the August 2013 payment forward.

---

[3] The payments did not have to be consecutive, but in order for any payment to be deemed timely, it would have to be made when Debtor was *current* under the payment schedule.

D.    Notice of Default

At the June 10, 2014, hearing, Covered Bridge called Amy Legrand, an

accounts manager at Cover Bridge, as its only witness. Legrand testified to sending Debtor

a notice of default letter on January 14, 2014. The letter states in relevant part:

> Since you have not made your payments according to your promissory note,
> this letter will serve as your written notice that unless we have *in our office* all
> payments, plus late fees and past due interest current within ten (10) days of
> the date of this letter, James Emory, Inc. will consider your purchase canceled.
> We will retain your down payment and take possession of the property. As
> you know, the property is still owned by James Emory, Inc. and no foreclosure
> action is necessary.
>
> The amount that you currently owe is $1,200.13. I trust that you will bring
> your account current within ten (10) days of the date of this letter. If we have
> not received $1,200.13 by January, 24th, 2014 the property will be put back in
> our inventory.

(Movant's Ex. M-4.)

Debtor stipulated to the contents of the letter but denied having ever received

it. As a rebuttal, Legrand testified that the letter was sent to the address where all prior

notifications were sent, and that Debtor called on January 23, 2014, one day prior to the cure

deadline, in an attempt to work out an agreement with Covered Bridge. However, Legrand

could not definitively testify as to whether Debtor acknowledged during the phone

conversation to having received the letter. Covered Bridge admitted into evidence its Loan

Servicing Notes for Debtor's account which documents the communications with Debtor on

January 23, 2014, but these notes make no mention of the letter. (Movant's Ex. M-5.) It was

also brought to the Court's attention later in the hearing, and Covered Bridge *did not deny,*

that the letter was sent to 353 Ernest Stinson Road, Dublin, Georgia 31027, rather than Debtor's correct address of 353 Ernest Stinson Road, *East* Dublin, Georgia 31027, and that the letter was sent via first class mail rather than certified or registered mail.

E.     Debtor's Bankruptcy Filing

On January 28, 2014, more than ten days after the demand letter was mailed, Debtor filed her Chapter 13 petition and her proposed Plan to repay creditors at a rate of $373.00 per month for thirty-six (36) months. (Dckts. 1, 6.) Debtor's Plan proposes to pay Covered Bridge postpetition direct payments of $168.56 and to cure its prepetition arrearage claim of $1200.13 pursuant to 11 U.S.C.§ 1322(b)(5). (Dckt. 6.) Aside from her debt to Covered Bridge, Debtor has three other secured claims, including two vehicles and her 1997 mobile home in which she claims non-exempt equity. (Dckt. 1.) Covered Bridge filed this Motion on February 17, 2014. (Dckt. 18.) The Confirmation Hearing has been continued pending the resolution of this Motion.

F.     The Motion for Relief

Covered Bridge's Motion for Relief contains the following allegations and requests from the Court:

3.     The Respondent is indebted pursuant to the execution of an Installment Note in favor of Covered Bridge, LLC, dated November 14, 2006, a copy of said Installment Note is attached hereto as Exhibit "A" and incorporated herein by reference.

4.     On or about October 31, 2006, Jenerra D. Guyton entered into an Agreement for Sale and Purchase of Real Estate with Covered Bridge, LLC for the purpose of purchasing 353 Ernest Stinson Road, East Dublin, Laurens County,

Georgia. A copy of the Sales Agreement is attached hereto as Exhibit "B" and incorporated herein by reference.

5.      The Sales Agreement states, "The conveyance to Purchaser is to be made by "Warranty Deed and will occur when Purchaser has made six (6) timely monthly payments." Since the inception of the indebtedness owed, the Debtor has never made six timely monthly payments therefore the Warranty Deed transferring the real property to the Debtor has never occurred.

6.      On January 14, 2014, James Emory, Inc., on behalf of Covered Bridge, LLC sent the debtor a demand letter notifying her if payment was not made, her tenancy would be terminated on January 24, 2014. A copy of the demand letter is attached hereto as Exhibit "C" and incorporated herein by reference.

7.      At this time, the debtor remains in the property and her tenancy has been terminated. The Movant is in need of the Court's permission to file a Writ of Possession and Dispossessory for removal of the debtor from the real property.

8.      Covered Bridge, LLC is entitled to relief from the automatic stay of bankruptcy as this property is not necessary to an effective bankruptcy plan of the debtor.

9.      The Movant shows it is the owner of the property and knows no other claims against the property.

10.      The debtor's plan provides for payment towards the installment note but the debtor's tenancy was terminated pre-petition.

11.      Continuation of automatic stay will result in irreparable harm.

12.      In the event a hearing cannot be held within thirty (30) days from the filing of the motion for relief from the automatic stay and waiver of 30-day requirement as required by 11 U.S.C. § 362, Movant, by and through its counsel, waives this requirement and agrees to the next earliest possible date, as evidenced by the signature below.

WHEREFORE, Movant prays that this Court terminate the automatic stay of bankruptcy with respect to the interest of the Movant in the property more particularly described in Movant's Motion for Relief from the Automatic Stay as to allow Movant to pursue its rights under its contract and under Georgia law including without limitation, filing of a Dispossessory action against the debtor, obtaining a Writ of Possession, removing the debtor from the real property and filing a proof of claim for any deficiency that may exist.

(Dckt. 18.)

G.      <u>The June 10, 2014 Evidentiary Hearing</u>

On June 10, 2014, the Court held an evidentiary hearing on the Motion for

Relief.  In addition to stipulating to the admissibility of the exhibits mentioned *supra*, the parties also stipulated to the value of the Property listed in Debtor's schedules of $10,913.00, and, that based on this value, there is no equity in the Property.

Debtor testified that her failure to tender any payments after September 26, 2013,[4] was the result of being laid off from her job at We Touch Visiting Caregivers.  As of February 2014, Debtor has obtained three positions of employment: a part time position with We Touch, a part time position with Easter Seals of Middle Georgia, and a full time position with Just for You.  Debtor testified that these three jobs will provide sufficient income for her to pay the monthly payments owed to Covered Bridge for the Property, the payments owed to Green Tree for her mobile home, and to fund her Chapter 13 Plan.

Debtor further testified that she has made approximately $9,000.00 in improvements to the Property including the addition of a car port, a cement driveway, a cement underpinning for her mobile home, and a well and septic tank.  Debtor tendered into evidence without objection an estimate in the amount of $5,500.00 from Roche, Inc. Mobile Home Service for moving the mobile home from the Property in the event she is required to do so.  (Debtor's Ex. D-2.)

Although she admitted to executing the Agreement, Debtor testified that she

---

[4] The September 26, 2013, transaction actually applied to the missed July 2013 payment.

was unaware of the requirement in the document to make six (6) timely monthly payments in order to have Covered Bridge convey the Special Warranty Deed to her. Debtor initially testified that she had made six (6) timely payments since executing the Note, but upon further investigation of the Borrower Statement of Account (Movant's Ex. M-3), Debtor conceded that only five (5) timely payments had been tendered.

III.   CONCLUSIONS OF LAW

A.   Effectiveness of Prepetition Notice of Default

As a preliminary matter, Covered Bridge takes the position that Debtor has no interest in the Property because her *tenancy* was terminated January 24, 2014, ten (10) days after the notification of default was sent on January 14, 2014. Therefore, the Court will first address whether Debtor had any interest in the Property when she filed her petition on January 28, 2014, before it addresses whether Covered Bridge is entitled to relief from the automatic stay.

> Proof that a letter, properly directed and stamped, was mailed to the last known address of an addressee satisfies due process because it was reasonably calculated to provide notice, and creates a presumption that the letter was received by the addressee.
>
> The presumption of receipt may be rebutted, however, by producing evidence which would support a finding of the non-existence of the presumed fact.
>
> Mere denial of receipt is insufficient to rebut the presumption of receipt. Many courts characterize "mere denial" as just that: denial without additional facts that point to the credibility of the addressee's denial. The "mere return" of an unopened certified letter may also be insufficient to rebut the presumption of notice.
>
> On the other hand, direct testimony of nonreceipt, in combination with other

evidence, may be sufficient to support a finding that a mailing was not received . . . thereby rebut[ting] the presumption accorded a proper mailing.

*Adams v. Prescott (In re Prescott)*, 285 B.R. 763, 767-68 (Bankr. S.D. Ga. 2001)(Davis, J.)(alterations in original)(citations omitted)(internal quotation marks omitted).

In this case, there is sufficient evidence to rebut the presumption of receipt. First, Debtor testified that she did not receive the letter. Covered Bridge attempted to rebut Debtor's testimony by introducing evidence of Debtor contacting Covered Bridge the day before the ten (10) day cure period expired. However, its witness admitted she could not recall Debtor specifically mentioning having received the letter during their conversation. Moreover, Covered Bridge's Loan Servicing Notes (Movant's Ex. M-5) contain an entry documenting the phone conversation, but they make no mention of the letter.

Second, Covered Bridge did not follow its own procedure for notifying Debtor of the default. The Installment Note states in relevant part:

the holder shall give the undersigned ten (10) days' written notice of default (3) days after mailing if mailed to and received by the undersigned, certified or registered mail, return receipt requested. The undersigned shall have ten (10) days from the date the notice of default is effective in which to cure said default.

(Ex. A; dckt. 18.). The letter is dated January 14, 2014; similarly, Covered Bridge's witness testified and the Loan Servicing Notes indicate that the letter was sent on January 14, 2014. The letter states: "you will bring your account current within ten (10) days of the date of this letter. If we have not received $1,200.13 by January, 24th, 2014 the property will be put back

in our inventory." (Movant's Ex. M-4.) Pursuant to the Installment Note, Debtor should have been given ten (10) days to cure the default three (3) days after Covered Bridge mailed the letter. Therefore, January 24, 2014, was not the proper termination date of the cure period. Moreover, Covered Bridge admitted that it sent the letter first class mail rather than certified or registered mail, return receipt requested, as expressly called for in the Installment Note.

Third, the notification was not properly directed. At the hearing Covered Bridge admitted that it sent the letter to 353 Ernest Stinson Road, Dublin, Georgia 31027, rather than the correct address of 353 Ernest Stinson Road, *East* Dublin, Georgia 31027. To be entitled to the presumption, as stated *supra*, the notice must be properly directed. Addressing the letter to the wrong *city* cannot be construed as properly directing the notice. Therefore, pursuant to the foregoing factors, there is no presumption that Debtor received the letter, and I find that Debtor's interests in the Property, whatever those interests may have been, did not terminate prepetition.

B.    Documents Comprising the Land Sale Transaction

In determining Debtor's interest in the Property, the Court must first analyze the transaction entered into by the parties. The Court has essentially four (4) documents related to the sale of the Property to consider: the Agreement for Sale and Purchase of Real Estate, the Installment Note, the Special Warranty Deed, and the Security Deed. The content of these documents and the manner in which they were executed inform the Court's

characterization of this transaction.  A review of its component parts will be helpful.

1.    *Agreement for Sale and Purchase of Real Estate and Installment Note*

The Agreement states: "THE PURCHASER(S) agrees to buy and the Seller agrees to sell Lot No. 9 containing 1.44 acres . . . ." (Ex. B; dckt. 18.)  This is the only description of the Property stated in the Agreement.  While it is likely that both parties were familiar with the metes and bounds of the Property, the description listed in the Agreement appears to be grossly inadequate under Georgia law.  However, since the parties appear to have intended for the Special Warranty Deed and the Security Deed be part of this transaction, the more accurate description of the lot in question stated in those two documents provides the requisite property description for this contract.

The Agreement also contains the following curiously worded, internally inconsistent, and partially blank provision:

> This conveyance is subject to a Deed to Secure Debt executed by the Seller to _____ and recorded in _____ County Deed Records. Seller warrants that said Security Deed shall be removed as a lien on the herein described property prior to or simultaneously with payment of the Purchase Money Promissory Note and Security Deed that will be executed by Purchaser to Seller.  The conveyance to Purchaser(s) is to be made by Warranty Deed and will occur when Purchaser(s) has/have made six (6) timely monthly payments.  Subject to existing easements of record or in place.

*Id.*

The Agreement, executed October 31, 2006, makes specific reference to a

%AO 72A
(Rev. 8/82)

"Promissory Note."[5] On November 14, 2006, Debtor executed an "Installment Note" consistent with the payment terms set forth in the Agreement. Thus, the Court can conclude that Covered Bridge intended to sell real estate to Debtor, and Debtor intended to purchase the same, for a price certain, to be financed over one hundred eighty (180) months at twelve percent (12%) interest.

2.    *Special Warranty Deed*

Aside from delivery of the same, the Special Warranty Deed executed by Covered Bridge on November 14, 2014, contains all other requisite elements for a valid deed.[6] However, it was undisputed at the hearing that the deed was never delivered or

---

[5] The same Agreement uses the phrase "Purchase Money Promissory Note" in a separate paragraph.

[6] The basic elements of a valid deed include:

a) A written instrument purporting to convey title to land.
b) A grantor, that is a person or legal entity possessing contractual powers.
c) A grantee, who must be a legal entity, but need not necessarily be competent or *sui juris*.
d) Words of conveyance.
e) A description sufficient to identify the land.
f) Signature of the grantor.
g) Delivery of the instrument to the grantee or someone on his behalf.

The Code points out two other requirements which cannot be considered basic, since the deed is valid between the parties in their absence:

a) A good or valuable consideration. A deed of gift may be valid, without any of the ingredients of a valuable consideration as required for contracts generally.
b) Attestation by at least two witnesses. This requirements goes only to the recordability of the deed.

recorded and at all times remained in Covered Bridge's possession. This was the intent of the parties and reflects the nature of this transaction as a "contract for deed." Covered Bridge did not record or deliver the deed pursuant to the condition in the Agreement which, as mentioned *supra*, called for conveyance of the Property by warranty deed only after Debtor tendered six (6) timely monthly payments. It is evident from this language and Covered Bridge's actions that even though Covered Bridge allowed the deed to be executed, it never intended to relinquish the option to withdraw from the transaction in the event Debtor did not satisfy the condition and defaulted on the Installment Note.

It is well established under Georgia law that in order to produce a valid deed effective to pass title to real property, the grantor must, *inter alia,* deliver the instrument to the grantee or to someone on his behalf. The Supreme Court of Georgia has held:

> Execution of a deed without delivery is insufficient to pass title. It is indispensable to the delivery of a deed that it pass beyond the control or dominion of the grantor; and where a grantor retains a deed which he executes in his possession and control . . . without doing anything to indicate an intention to deliver it, it is void for want of a delivery.

*Smith v. Lockridge*, 288 Ga. 180, 183 (2010)(citations omitted)(internal quotation marks omitted). Therefore, without proper delivery, I find that under Georgia law the Special Warranty Deed is invalid. Title has not yet passed to Debtor.

---

2 Daniel F. Hinkel, Pindar's Georgia Real Estate Law & Procedure § 19-15 (6th ed. 2004)(footnotes omitted); *see also* O.C.G.A. § 44-5-30.

3.    *Security Deed*

The remaining document executed by the parties pursuant to this transaction

is the Security Deed dated November 14, 2006.

> A security deed is first of all a conveyance of land, and must meet all the
> standards of validity applicable to deeds generally, including the naming of a
> grantor and a grantee, sufficient words of conveyance or grant, a valid
> description of the property conveyed, proper execution and attestation, and an
> effective delivery.

*Jones v. Phillips*, 227 Ga.App. 94 (1997)(citation omitted)(internal quotation marks omitted).

The Security Deed, like the Special Warranty Deed, was never recorded in the Laurens

County records, but it was apparently "delivered" by Debtor to Covered Bridge since the

latter claims to hold the original.

However, notwithstanding the assumed delivery, the Court takes note of the

words of conveyance found in the Security Deed.   The Deed states in relevant part:

"Borrower does hereby mortgage, grant and convey to Lender the following described

property located in Laurens County, Georgia . . . ."  (Movant's Ex. M-2.)

"[O]ne who executes a security deed cannot convey what he does not own."

2 Daniel F. Hinkel, Pindar's Georgia Real Estate Law & Procedure § 21-7 (6th ed.

2004)(footnote omitted); *Lionheart Legend, Inc. v. Norwest Bank Minnesota Nat. Ass'n*, 253

Ga.App. 663, 667 (2002).  Because Covered Bridge never delivered the Special Warranty

Deed to Debtor and never intended to convey title to the Property until after Debtor tendered

six (6) timely monthly payments, Debtor did not have anything to convey to Covered Bridge

with the Security Deed.  For the foregoing reasons, I find the Security Deed to also be invalid.

C.     The Transaction is a Contract For Deed and Bond For Title

The Court's review of the documents comprising the agreement between the parties reveals that the transaction was intended as a contract for deed with the elements of a bond for title.

> A contract for deed under Georgia law "is for all practical purposes no different from a bond for title." *Chilivis v. Tumlin Woods Realty Assoc.*, 250 Ga. 179, 183, 297 S.E.2d 4, 8 (1982) (emphasis omitted). Under a bond for title, "an equitable estate arises in favor of the holder of the bond limited by the amount of his investment." *Id.* at 182, 297 S.E.2d 4; *see also  Roberts v. Verdi (In re Verdi)*, 244 B.R. 494, 497 (Bankr. M.D. Ga. 2000) ("A bond for title is a contract signed by the owner of land, reciting that he has received a certain part of the purchase money for the described land, and binding himself in a penal sum to make a good title to the purchaser when the remainder of the purchase price is paid." (*quoting Kemp v. Parks*, 227 Ga. 319, 322, 180 S.E.2d 350, 353 (1971) (Felton, J., dissenting) (citation omitted))).

*Prescott*, 285 B.R. at 766.

Here, all the requisite elements are established: (1) the parties executed a contract for the sale of land; (2) the contract was signed by the owner of land; (3) the Agreement recites that the seller received a part of the purchase money; (4) the land is described[7] (at least by reference to the Special Warranty Deed); (5) the seller confirmed that

---

[7] Although it does not change the Court's analysis, it is worth noting that the very first document executed by the parties, namely the Agreement, is deficient for its intended purpose.  The Supreme Court of Georgia has held:

> A contract for the sale of land . . . must describe the land to be sold with

it would make good title; (6) the obligation to convey title arises when the purchaser has tendered six (6) timely payments towards the purchase price; and (7) possession was delivered to the purchaser.

As the Court of Appeals of Georgia has held in one case involving such a contract:

> Though installment land contracts such as the one at issue have been commonly employed in other states (see 7 Powell On Real Property, Ch. 84D (1991)), they have never been widely used in Georgia, and have received little appellate consideration. See Pindar, Ga. Real Est. Sales Contracts, § 1–3.1 (3rd ed. 1987). We agree with the trial court that this installment contract was akin to the now largely abandoned bond for title in that it served as a contract for the sale and purchase of land; initially conveyed possession to the purchaser while legal title remained in the seller; and acted as a security instrument in the manner of a security deed while the payments were being made.

*Southern Land & Cattle Co. v. Simmons*, 202 Ga.App. 734, 735 (1992).

While the form of the transaction at bar differs slightly from that of the installment land contract and the more typical contract for deed because Debtor was entitled to conveyance of title (subject to a security deed) after making only six (6) timely payments, the substance is essentially the same.  The condition triggering conveyance is the only

---

> the same degree of certainty as that required of a deed conveying realty. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable . . . .

*Smith v. Wilkinson*, 208 Ga. 489, 493 (1951)(citations omitted); *see also Singh v. Sterling United, Inc.*, 326 Ga.App. 504, 508 (2014).

notable difference.

Because Covered Bridge retained title as security, it was obligated to execute

a bond for title.  The Georgia Code states:

> Any seller of real estate who retains title to the real estate as security for the
> purchase price and who does not convey title to the purchaser or take back a
> deed to secure debt shall execute and deliver to the purchaser a bond for title
> which shall correctly set forth the unpaid portion of the purchase price and the
> maturity of the indebtedness. If any part of the purchase price falls due more
> than three years from the date of the instrument, the seller shall have the
> instrument recorded before delivery of the bond for title in the county where
> the land is located and shall pay the tax required by this article for the
> recording of the instrument.

O.C.G.A. § 48-6-68.

Covered Bridge did not execute and deliver to Debtor a separate document

identified as a "bond for title." But, it did execute and deliver the Installment Note, which

sets forth the unpaid portion of the purchase price and the maturity of the indebtedness, and

the Agreement, which, as stated *supra*, satisfies the elements of a bond for title. Although

the Agreement is wanting in the complex, extensive detail typically found in the common

security deed, it read together with the Installment Note was intended as a bond for title –

serving as a contract for the sale and purchase of land; initially conveying possession to the

purchaser while legal title remained with the seller. *See Southern Land & Cattle Co.*, 202

Ga.App. at 735.

D.   <u>Debtor's Interest in the Property</u>

As recited above, Debtor held an equitable interest in the Property at the time of filing her petition. The extent of that interest (limited by the amount of Debtor's investment, *see Chilivis* discussion *infra*) need not be decided at this stage, although it may become important with respect to confirmation of her Plan. But, for purposes of stay relief, the Court observes that the Installment Note states that Debtor promises to pay the principal sum of $13,795.00 with interest at a rate of twelve percent (12%) per annum to be paid in one hundred eighty (180) consecutive installments of $165.56, commencing on January 1, 2007, and continuing on the same day of each month until the debt has been paid in full. (Ex. A; dckt. 18.)

Under Georgia law:

> While legal title remains in the maker of a bond for title until full payment of the purchase price, such title is retained only as security for such payment and an equitable estate arises in favor of the holder of the bond limited by the amount of his investment. He becomes entitled to full possessory rights in the land and for most purposes becomes the owner of the land as against all persons except the maker of the bond and those claiming under him. When the full price has been paid, he acquires a perfect equity which is the equivalent of a legal title upon which ejectment may be maintained.

*Chilivis v. Tumlin Woods Realty Assocs., Inc.*, 250 Ga. 179, 182 (1982)(citation omitted)(internal quotation marks omitted).

Unlike the typical bond for title, where title is conveyed to the buyer only after the full purchase price has been paid, Debtor's contract with Covered Bridge allows her to

AO 72A
(Rev. 8/82)

obtain title (subject to a security deed) upon tendering six (6) timely monthly payments, which are not required to be consecutive.  Thus, Debtor's interest (or "equitable estate") in the Property might be solidified pursuant to a plan provision that allows her to make the sixth timely payment.

At the hearing Debtor testified, and Covered Bridge did not dispute, that since executing the Agreement and the Installment Note, she has tendered a $200.00 down payment and other payments totaling in excess of $12,000.00 to Covered Bridge in principal and interest.  Moreover, Debtor testified that she has remained in possession of the Property the entire time while making improvements at a cost of more than $9000.00.  Based on these facts alone, it would seem Debtor has a significant equitable interest in the Property.

The Supreme Court of Georgia stated in *Watkins v. Maddox Medic. Assocs., Inc.*, 270 Ga. 404, 405-06 (1998): "As noted in Pindar, Ga. Real Estate Law and Procedure, § 20-72 (4th ed.1993), if the document constituting a bond for title contains no power of sale, 'the equity of the purchaser must be foreclosed by some legal proceeding, unless barred by adverse possession or abandonment.'"  *See also Prescott*, 285 B.R. at 767.  Although the Installment Note does mention the power of sale, it does so by stating "the holder may exercise all remedies available to him . . . including . . . the exercise of the power of sale contained in the deed to secure debt . . . ."  (Ex. A; dckt. 18.)  Because the Security Deed is invalid as discussed *supra*, so too is any reference to a power of sale clause located in that deed.  Therefore, Debtor's interest in the Property must be foreclosed by some legal

proceeding.

This case is not unlike other cases to have been decided by bankruptcy courts sitting in Georgia. In *In re Verdi*, the debtor executed an installment contract, which contains many terms and conditions similar to those found in the Agreement in the case before the Court. *Roberts v. Verdi (In re Verdi)*, 244 B.R. 494, 496 (Bankr. M.D. Ga. 2000). The agreement in *Verdi* provided that if the debtor defaulted on any payment, the contract would be terminated, and the seller would have the right to re-enter and take possession of the premises. *Id.* The debtor defaulted on her monthly payments, and the creditor demanded that she vacate and remove her personal property from the realty. *Id* at 495. Several months later the debtor filed a Chapter 13 petition and plan in which she offered to cure the arrearage under the land contract through the plan. *Id.* The creditor moved the court for relief so that he could remove the debtor from the property. *Id.* The bankruptcy court held:

> [T]he Court is persuaded that Respondent's interest in the realty was not terminated prepetition. The evidence shows that Movant delivered possession of the realty to Respondent. Respondent made a down payment. Respondent made improvements by placing a mobile home on the realty. Respondent resides on the realty. Respondent has not abandoned the realty, and Movant is not in adverse possession. Respondent's interest in the realty has not been "foreclosed by some legal proceeding." The Court is persuaded that Respondent's interest in the realty is property of her bankruptcy estate.

*Id.* at 497; *see also Prescott*, 285 B.R. at 767 (holding that despite a clause in the contract for deed stating that the purchasers were to have acquired no equitable rights of redemption, the debtor's interest in the land was equitable title akin to that of the holder of a bond for title and remained intact and part of the bankruptcy estate); *Beacham v. Somma Invs., Inc. (In re*

*Beacham)*, 2006 WL 565929, at *2 (Bankr. M.D. Ga. Feb. 17, 2006).

Turning to the case at bar, the evidence shows that Covered Bridge delivered possession of the Property to Debtor. Debtor made a down payment and has tendered over $12,000.00 in principal and interest to Covered Bridge. She made improvements to the Property by adding a septic tank and well, a cement driveway, a car port, and a cement underpinning for a mobile home. Debtor resides on the Property; she has not abandoned it, and Covered Bridge is not in adverse possession. Debtor's interest in the Property has not been "foreclosed by some legal proceeding." Therefore, pursuant to the foregoing, the Court is persuaded that Debtor had possessory and equitable interests in the Property that were not terminated prepetition. Those interests became part of the bankruptcy estate upon the filing of Debtor's petition.

E.     Relief from the Automatic Stay under 11 U.S.C. § 362(d)(2)

Because I find that Debtor had interests in the Property upon the filing of her petition, the Court must now address Covered Bridge's request for relief from the automatic stay under 11 U.S.C. § 362(d)(2). The automatic stay in bankruptcy is governed by 11 U.S.C. § 362. Upon the filing of a petition, § 362(a) stays "the commencement . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title" as well as "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(1) and (3). Property of the estate

"is comprised of . . . all legal or *equitable* interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a) (emphasis added). It is well established that unless federal interests require otherwise, property interests in this state are created and defined by Georgia law. *Butner v. U.S.*, 440 U.S. 48, 55 (1979).

In its Motion, Covered Bridge seeks to terminate the automatic stay under § 362(d), allowing it to file a dispossessory action in state court and remove Debtor from the Property. 11 U.S.C. § 362(d) states in relevant part:

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . .
> > (2) with respect to a stay of an act against property . . . if—
> > > (A) the debtor does not have an equity in such property; and
> > > (B) such property is not necessary to an effective reorganization . . . .

The parties stipulated that Debtor does not have any equity in the Property based on the value listed in Schedule A of Debtor's petition of $10,913.00 and the amount of Covered Bridge's claim of $11,003.72, which makes the initial inquiry under § 362(d)(2)(A) a simple one. (Dckt. 14.) With no equity in the Property, the burden shifts to the debtor to prove that the property is necessary for an effective reorganization. *See* 11 U.S.C. § 362(g).

The test for establishing necessity under § 362(d)(2)(B) was articulated in *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, where the Supreme Court held:

> What [necessary to an effective reorganization] requires is not merely a showing that if there is conceivably to be an effective reorganization, this

> property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be a reasonable possibility of a successful reorganization within a reasonable time.

484 U.S. 365, 375-76 (1988)(citation omitted)(internal quotation marks omitted). My Southern District colleague, Judge Lamar W. Davis, Jr., has previously held that "necessary" means the property is "logically required" for the success of a plan. *In re Simmons*, 446 B.R. 646, 649 (Bankr. S.D. Ga. 2010)(Davis, J.).

At the hearing Debtor testified that she defaulted on the monthly payments under the Installment Note because she was laid off from her job in August 2013. Debtor further testified that in the January - February 2014 time frame, she obtained three positions of employment: a full time position with Just For You and part time positions at We Touch Visiting Caregivers and Easter Seals of Middle Georgia. With her new employment Debtor testified confidently that she could make monthly contract payments to Covered Bridge for the Property and to Green Tree for her mobile home while still having sufficient monies to fund her Chapter 13 Plan, which presumably will include cure payments to Covered Bridge. Moreover, Debtor testified that a salary deduction order has been put in place to fund her Plan, and she believed four (4) or five (5) withholdings have already been deducted from her paycheck since the Notice to Commence Wage Withholding was received by her employer.

By my calculation, Debtor is in arrears to Covered Bridge for fourteen months (August 2013 through September 2014) at a rate of approximately $185.00 per month

(including the typical late fee)[8] for a total of approximately $2,600.  In very rough numbers, this would leave a monthly cure payment of approximately $72.00 per month over the course of a thirty-six (36) month plan.  Debtor's Schedule J appears to take into account the monthly payments for the mobile home and the Property and calculates a monthly net income of $373.78. (Dckt. 14.) Debtor filed her initial Chapter 13 Plan which proposes to pay $373.00 to the Trustee for thirty-six (36) months. (Dckt. 6.)  Given these numbers, it is conceivable that Debtor can afford the monthly contract payments on the Property while funding the arrearage through her Plan.  With a Plan filed awaiting confirmation, I find at a minimum, that there exists a reasonable possibility of a successful reorganization within a reasonable time.

Moreover, Debtor's monthly housing expense associated with the mobile home and the Property totals approximately $430.00.  It is hard to imagine Debtor being able to find suitable, similar housing for a lower monthly payment.  And, to move the mobile home from the Property would cause Debtor to incur an expense of $5,500.00 (Debtor's Ex. D-2), which could impact her ability to fund the Plan.  Therefore, I find that the Property is logically required for the success of the Plan.

---

[8] It should be noted that Debtor attempted to pay a monthly installment postpetition; however, the payment was returned by Covered Bridge because of its position that Debtor's tenancy had terminated.  Because Covered Bridge would not accept payment from Debtor, it is questionable whether any late fees should be charged postpetition.

F.   Summary and Conclusion

Based on the foregoing, Covered Bridge has failed to make the case as to why it is entitled to relief from the automatic stay.   Covered Bridge failed to follow the notice procedure outlined in the Installment Note, and the notice was improperly addressed to the wrong city.   Therefore, the notice did not terminate Debtor's interests in the Property prepetition.

Because Covered Bridge did not deliver the Special Warranty Deed to Debtor, and because Debtor did not have title to convey to Covered Bridge with the Security Deed, the deeds are invalid.   Under Georgia law, in the absence of a security deed, the seller must execute and deliver a bond for title.   The Installment Note and Agreement to Sale and Purchase Real Estate in this transaction are akin to a bond for title, giving Debtor a possessory interest and an equitable interest in the Property.   Debtor's interests were not foreclosed by a legal proceeding prepetition; therefore, they became part of the bankruptcy estate subject to the automatic stay upon the filing of her petition.

Although Debtor has no equity in the Property, she met her burden of proving that the Property is necessary to an effective reorganization under § 362(d)(2).   Since filing her petition, Debtor has obtained three positions of employment, she filed a Plan with the Court for consideration, and she began making payments to the Trustee through a salary deduction with her employer.   She also testified that her current income will allow her to pay monthly installments to Covered Bridge while funding her Chapter 13 Plan.   Given this

evidence, which was undisputed, there exists a reasonable possibility of a successful
reorganization within a reasonable time. Moreover, if Debtor were forced to move, there is
a likelihood that it could negatively affect her ability to complete the Plan. Therefore, the
Property is logically required for success of the Plan.

### O R D E R

Pursuant to the foregoing Findings of Fact and Conclusions of Law, it is the
ORDER of this Court that Covered Bridge's Motion for Relief from the Automatic Stay
of Bankruptcy and Waiver of 30 Day Requirement (dckt. 18) is hereby denied on an
interim basis to allow Debtor the opportunity to successfully confirm her Plan of
reorganization.

Dated at Savannah, Georgia, this 25th day of September, 2014.

Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia